# FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

AUG 30 2021

Judge Sharon Johnson Coleman
United States District Court

UNITED STATES OF AMERICA

v.

MR. DAVID'S FLOORING
INTERNATIONAL, LLC

No. 21-CR-517

Judge Sharon Johnson Coleman

## PLEA AGREEMENT

1.     This Plea Agreement between the UNITED STATES OF AMERICA and the defendant, MR. DAVID'S FLOORING INTERNATIONAL, LLC, a corporation organized and existing under the laws of Delaware, is made pursuant to Rule 11 of Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C), as more fully set forth below. The parties to this Plea Agreement have agreed upon the following:

## Charges in This Case

2.     Count One of the Information in this case charges the defendant with entering into and engaging in a *per se* unlawful combination and conspiracy with other companies and individuals to suppress and eliminate competition by agreeing to rig bids and fix prices of commercial flooring services and products sold in the United States beginning at least as early as 2009, and continuing through at least June 22, 2017, in the Northern District of Illinois and elsewhere, in violation of the Sherman Act, Title 15, United States Code, Section 1.

3.     Count Two of the Information in this case charges the defendant with knowingly conspiring with other companies and individuals to conduct financial transactions affecting interstate commerce in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), which transactions involved the proceeds of specified unlawful activities, namely, wire fraud in violation of Title 18, United States Code, Sections 1343 and 1346, knowing, while conducting and attempting to conduct such financial transaction, that the property involved in the financial transactions represented the proceeds of some form of unlawful activity; and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activities, beginning at least as early as 2013, and continuing through at least June 13, 2018, in the Northern District of Illinois and elsewhere, in violation of Title 18, United States Code, Section 1956(h).

### Rights of Defendant

4.     The defendant understands its rights:

a.     to be represented by an attorney;

b.     to be charged by Indictment;

c.     to plead not guilty to any criminal charge brought against it;

d.     to have a trial by jury, at which it would be presumed not guilty of the charges and the United States would have to prove every essential element of the charged offenses beyond a reasonable doubt for it to be found guilty;

e.     to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;

f.      to appeal its conviction if it is found guilty; and

g.      to appeal the imposition of sentence against it.

**Agreement to Plead Guilty and Waive Certain Rights**

5.      The defendant knowingly and voluntarily waives:

a.      the rights set out in subparagraphs 4(b)-(e) above;

b.      the right to file any appeal or collateral attack that challenges its conviction, including but not limited to any appeal or collateral attack raising any argument that (1) the statutes to which it is pleading guilty are unconstitutional or (2) the admitted conduct does not fall within the scope of such statutes; and

c.      the right to file any appeal or collateral attack, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that sentence is consistent with or below the Recommended Sentence in Paragraph 15 of this Plea Agreement, regardless of how the sentence is determined by the Court. For purposes of the waiver of appeal or collateral attack of the sentence, the sentence imposed is deemed consistent with or below the Recommended Sentence in Paragraph 15 even if the sentence imposed includes an order of restitution on the money-laundering offense charged in Count Two or a term of probation, if the sentence is otherwise consistent with or below the Recommended Sentence in Paragraph 15, unless the term of probation exceeds the length authorized by 18 U.S.C. § 3561(c). This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b) and (c).

d.      Nothing in this Paragraph 5 however, will act as a bar to the defendant perfecting any legal remedies it may otherwise have on appeal or collateral

3

attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct.

      e.     Pursuant to Federal Rule of Criminal Procedure 7(b), the defendant will waive indictment and plead guilty to a two-count Information to be filed in the United States District Court for the Northern District of Illinois.

      6.     The defendant will plead guilty to the criminal charges described in Paragraphs 2 and 3 above pursuant to the terms of this Plea Agreement and will make a factual admission of guilt to the Court in accordance with Federal Rule of Criminal Procedure 11, as set forth in Paragraph 7 below.

### Factual Bases for Offenses Charged

      7.     The defendant will plead guilty because it is in fact guilty of the charges contained in the Information. In pleading guilty, the defendant admits the following facts, and each and every fact contained in the Information, and that those facts establish its guilt beyond a reasonable doubt to the charges contained in the Information:

### Count One: Antitrust Conspiracy

      a.     For purposes of this Plea Agreement, the relevant period for Count One is that period beginning at least as early as 2009, and continuing through at least June 22, 2017.

      b.     During the relevant period for Count One, the defendant was a corporation organized and existing under the laws of Delaware, with its principal place of business in this District. During the relevant period for Count One, the

defendant was a provider of commercial flooring services and products in the United States, and employed 200 or more individuals. Providers of commercial flooring services and products remove any preexisting flooring products at the job site, prepare the floor surface for installation, and install new flooring materials, including but not limited to carpet, wood, vinyl, tile, and laminate flooring products. During the relevant period for Count One, Vortex Commercial Flooring, Inc., Company C, and Company E were corporations organized and existing under the laws of Illinois with principal places of business located in the District, and were providers of commercial flooring services and products in the United States.

c.      During the relevant period for Count One, the defendant, through its personnel, including its high-level personnel, including but not limited to Michael P. Gannon, participated in a conspiracy with other companies and individuals engaged in the sale of commercial flooring services and products, including Vortex Commercial Flooring, Inc., Delmar E. Church, Jr., Robert A. Patrey, Jr., Kenneth R. Smith, Company C, Company E, and Carter Brett, one purpose of which was to suppress and eliminate competition by agreeing to rig bids and fix prices of commercial flooring services and products sold in the United States. In furtherance of the conspiracy, the defendant, through defendant's personnel, attended meetings, and participated in conversations and other communications with representatives of other companies that provide commercial flooring services and products in order to discuss methods for rigging bids and fixing the prices of commercial flooring services and products. During these meetings, conversations, and/or other communications,

the defendant, through its personnel, and its co-conspirators agreed to rig bids and fix the prices of commercial flooring services and products to be sold in the United States. The defendant and its co-conspirators exchanged pricing-related information to enable co-conspirator companies to submit complementary bids for commercial flooring services and products to potential customers, so that the agreed-upon co-conspirator would win the business.

d.      During the relevant period, in some instances, co-conspirators, including employees of general contractors, construction management companies, end users, and/or architectural firms, explicitly requested complementary bids from the defendant, which the defendant understood were likely made without the authorization or approval from the end user. In other instances, employees of general contractors, construction management companies, end users, and/or architectural firms, made statements to the defendant about the need for additional bids, which the defendant understood to be tacit requests to obtain complementary bids.

e.      During the relevant period for Count One, the defendant's sale of commercial flooring services and products to customers in the United States affected by the violation of 15 U.S.C. § 1 totaled at least $2.31 million.

f.      The largest contract on which the defendant submitted a complementary bid in connection with the conspiracy was in the amount of $3,634,329. The contract for $3,365,210 ultimately was awarded to Vortex Commercial Flooring, Inc., the lowest bidder, in accordance with the agreement.

6

g.      During the relevant period for Count One, the defendant and its co-conspirators sold commercial flooring services and products in the United States in a continuous and uninterrupted flow of interstate trade and commerce. In addition, records and documents necessary for the sale and provision of such services and products by the corporate conspirators, as well as payments and solicitations for those services and products, traveled in interstate trade and commerce. The business activities of the defendant and its co-conspirators in connection with the sale and provision of commercial flooring services and products that were the subject of this conspiracy were within the flow of, and substantially affected, interstate trade and commerce.

h.      Acts in furtherance of this conspiracy were carried out within the Northern District of Illinois and elsewhere. Commercial flooring services and products that were the subject of this conspiracy were sold by one or more of the conspirators to customers in this District and elsewhere.

## Count Two: Money Laundering Conspiracy

i.      For purposes of this Plea Agreement, the relevant period for Count Two is that period beginning at least as early as 2013, and continuing through at least June 13, 2018.

j.      During the relevant period for Count Two, Manufacturer A was a corporation organized and existing under the laws of Georgia, with its principal place of business in Georgia. Manufacturer A manufactured flooring products, including

7

carpet, tile, hardwood, laminate, and vinyl products, and sold these products in this District and elsewhere.

   k. During most of the relevant period for Count Two, Carter Brett was an account executive at Manufacturer A, whose job responsibilities included the promotion and sale of Manufacturer A's commercial flooring products to providers of commercial flooring services and products (as defined in Paragraph 7(b)) in this District. Brett sold Manufacturer A's products by offering prices within a set range established and authorized by Manufacturer A in a pricing matrix. As an account executive for Manufacturer A, Brett owed a duty of honest services to Manufacturer A regarding decisions made relating to the prices at which he offered and sold his employer's products.

   l. Beginning at least as early as 2013, and continuing through at least June 13, 2018, the defendant, through its personnel, and together with its co-conspirator Brett, knowingly and with intent to defraud, devised and participated in a scheme to defraud and to deprive Manufacturer A of its right to Brett's honest services through the offer and payment of kickbacks.

   m. It was part of the scheme that the defendant gave kickbacks in the form of cash and cash equivalents so that Brett would offer low pricing, a material fact not disclosed to Manufacturer A. As the defendant intended, Brett materially deceived and defrauded Manufacturer A by not disclosing to his employer that he was being paid personally to offer these low prices.

n.     It was further part of the scheme that the defendant paid the kickbacks to Brett from payments it received from its customers for providing commercial flooring products from Manufacturer A at the low prices that Brett offered.

o.     As a result of the scheme, the defendant intended and caused tangible monetary harm to Manufacturer A in the form of lower revenue derived from the low prices that Brett offered to the defendant in exchange for the defendant providing personal kickback payments to Brett that were not disclosed to Manufacturer A.

p.     Beginning in or about 2013, and continuing through at least June 13, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant, through its personnel, including its high-level personnel, including but not limited to Co-conspirator A3, did knowingly conspire with Brett and other co-conspirators to conduct financial transactions affecting interstate commerce in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), which transactions involved the proceeds of specified unlawful activities, namely, wire fraud in violation of Title 18, United States Code, Sections 1343 and 1346, knowing, while conducting and attempting to conduct such financial transactions, that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activities.

q.    It was further part of the conspiracy that the defendant concealed and attempted to conceal the kickback payments to Brett. In early-to-mid 2013, Co-conspirator A3 suggested Brett create a shell company to receive kickback payments from the defendant, in order to conceal the unlawful payments from Manufacturer A, Brett's employer.

r.    It was further part of the conspiracy that on or about July 10, 2013, co-conspirator Brett then caused to be established a corporation, MGAB13 Consulting, Inc. ("MGAB13"), organized and existing under the laws of Illinois, with its purported principal place of business in the Northern District of Illinois, and under the nominal ownership of Brett's family member. Brett hid the true purpose of MGAB13—namely, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activities—by causing the corporation to open bank accounts with the signatory authority of his family member and by falsely indicating that his family member was a flooring consultant who provided services to the defendant. As the defendant and its co-conspirators knew, Brett's family member had no experience in the commercial flooring industry and did not perform any consulting services for the defendant. The sole purpose of MGAB13 was to accept the kickback payments in a manner to conceal and disguise the nature, location, source, ownership, and control of those kickback payments paid by the defendant.

s.    The defendant issued the following kickback payments during the conspiracy period, made payable to MGAB13 to conceal and disguise the nature,

location, source, ownership, and control of the proceeds of the specified unlawful activity described above in Paragraphs 7(i)-(n), and signed by Co-conspirator A3 or other personnel, which co-conspirator Brett subsequently caused to be deposited in account number ending in 1940 at Roselle Bank & Trust, an FDIC-insured financial institution operating in interstate commerce in Roselle, Illinois, in the name of MGAB13:

| Date of Check | Check No. | Date of Deposit | Deposit Amount |
|---|---|---|---|
| 09/24/2013 | 7704 | 10/07/2013 | $ 15,828.00 |
| 01/31/2014 | 500105 | 02/19/2014 | $ 4,705.00 |
| 02/07/2014 | 500195 | 02/19/2014 | $ 3,184.00 |
| 08/12/2015 | 508228 | 08/14/2015 | $ 11,630.00 |
| 12/25/2015 | 510800 | 12/30/2015 | $ 4,002.45 |
| 09/30/2016 | 517025 | 10/03/2016 | $ 912.00 |
| | | TOTAL | $ 40,261.45 |

### Elements of the Offenses

8.    The elements of the offense of antitrust charged in Count One are that:

a.    the conspiracy described in the Information existed at or about the time alleged;

b.    the defendant knowingly became a member of the conspiracy; and

c.    the conspiracy described in the Information either substantially affected interstate commerce in goods or services or occurred within the flow of interstate commerce in goods and services.

9.    The elements of the offense of conspiracy to commit money laundering charged in Count Two are that:

11

      a.    the conspiracy described in the Information existed at or about the time alleged;

      b.    the defendant knowingly became a member of the conspiracy; and

      c.    the conspiracy described in the Information involved conducting financial transactions, which involved the proceeds of specified unlawful activities, and these transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activities.

### Maximum Statutory Penalties

10.    The defendant understands that the antitrust charge, Count One of the Information, to which it is pleading guilty, carries a fine in an amount equal to the greatest of:

      a.    $100 million, pursuant to 15 U.S.C. § 1; or

      b.    twice the gross pecuniary gain the conspirators derived from the offense, or twice the gross pecuniary loss resulting from the offense, whichever is greatest, pursuant to 15 U.S.C. § 1 and 18 U.S.C. § 3571(c) and (d).

11.    The defendant understands that the money laundering charge, Count Two of the Information, to which it is pleading guilty, carries a maximum fine of $500,000, or twice the value of the property involved in the money laundering transactions, whichever is greater, pursuant to 18 U.S.C. § 1956(a)(1) and (h).

12.    In addition, the defendant understands that:

a.      pursuant to U.S.S.G. § 8D1.2(a)(1) or 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years;

b.      pursuant to U.S.S.G. §8B1.1 or 18 U.S.C. § 3563(b)(2), the Court may order it to pay restitution to the victims of the antitrust offense;

c.      pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii), the Court is required to order it to pay restitution to the victims of the money laundering offense; and

d.      pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the defendant to pay a $400 special assessment upon conviction for each of the charged crimes, for a total of $800.

### Sentencing Guidelines

13.     The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider, in determining and imposing sentence, the Guidelines Manual in effect on the date of sentencing unless that Manual provides for greater punishment than the Manual in effect on the last date that the offense of conviction was committed, in which case the Court must consider the Guidelines Manual in effect on the last date that the offense of conviction was committed. The parties agree that there is no *ex post facto* issue under the November 2018 Guidelines Manual. The Court must also consider the other factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence. The defendant understands that the Court will make Guidelines determinations by applying a standard of preponderance of the evidence. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable

Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

14.     Pursuant to U.S.S.G. § 1B1.8, the United States agrees that self-incriminating information that the defendant provides to the United States pursuant to this Plea Agreement will not be used to increase the volume of affected commerce attributable to the defendant or in determining the defendant's applicable Guidelines range, except to the extent provided in U.S.S.G. §1B1.8(b).

## Sentencing Agreement

15.     Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 19 of this Plea Agreement, the United States and the defendant agree as follows:

a.      The parties agree that the appropriate disposition of this case is, and agree to recommend jointly that, the Court impose a sentence within the applicable Guidelines range requiring the defendant to pay to the United States a criminal fine of no less than $1,200,000 and no more than $1,600,000, payable in full before the fifteenth (15th) day after the date of judgment, and, with respect to the antitrust offense charged in Count One, no order of restitution (the "Recommended Sentence"). Each party is free to recommend a fine within the $1,200,000 to $1,600,000 range.

b.      The defendant understands that the Court will order it to pay a $800 special assessment, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

c.    In light of the availability of civil causes of action, including, *Northbrook Park District v. Mr. David's Flooring International, LLC, et al.*, 20 CV 7538, in the United States District Court for the Northern District of Illinois, which potentially provide for a recovery of a multiple of actual damages, the Recommended Sentence does not include a restitution order for the antitrust offense charged in Count One of the Information. If the Court rejects the recommendation for no order of restitution for the antitrust offense, the United States and defendant agree that this Plea Agreement, except for subparagraph 18(b) below, will be rendered void and defendant will be free to withdraw its guilty plea as provided in subparagraph 18(b).

d.    The parties acknowledge that, pursuant to Title 18, United States Code, Section 3663A(a)(1), the Court must order defendant to pay restitution to any victim of the money-laundering offense charged in Count Two of the Information. The parties agree that there is no identifiable victim under Title 18, United States Code, Section 3663A(a)(2). Both parties will request that no order of restitution be imposed on Count Two, but the defendant understands that the Court's rejection of the request will not void this Plea Agreement.

e.    Both parties will recommend that no term of probation be imposed, but the defendant understands that the Court's denial of this request will not void this Plea Agreement.

f.    The parties agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a

departure pursuant to U.S.S.G. § 8C4.1. The parties agree not to seek at the sentencing hearing any Guidelines adjustment for any reason that is not set forth in this Plea Agreement. The parties further agree that the Recommended Sentence set forth in this Plea Agreement is reasonable.

g.    The United States and the defendant jointly submit that this Plea Agreement, together with the record that will be created by the United States and the defendant at the plea and sentencing hearings, and the further disclosure described in Paragraph 17, will provide sufficient information concerning the defendant, the crime charged in this case, and the defendant's role in the crime to enable the meaningful exercise of sentencing authority by the Court under 18 U.S.C. § 3553. The United States and defendant agree to request jointly that the Court accept the defendant's guilty plea and at the time of sentencing impose sentence based upon the record provided by the defendant and the United States, under the provisions of Fed. R. Crim. P. 32(c)(1)(A)(ii) and U.S.S.G. § 6A1.1(a)(2). The Court's denial of this request will not void this Plea Agreement.

### Offense Level Calculations

16.    The United States and the defendant agree and recommend that the Court apply the Chapter 8 – Sentencing of Organizations guidelines in determining the Guidelines Fine Range for a corporate defendant, pursuant to U.S.S.G. § 8C2.1(a).

#### a. Offense Level Calculations for Count One: Antitrust Offense

i.    Pursuant to U.S.S.G. § 8C2.1(a) and § 8C2.3(a), the Guidelines provision applicable to the offense charged in Count One of the Information is U.S.S.G. § 2R1.1.

ii.     The base offense level is 12, pursuant to U.S.S.G. § 2R1.1(a).

iii.    Because the conduct involved the defendant's participation in an agreement to submit non-competitive bids, the base offense level is increased by one level, pursuant to U.S.S.G. § 2R1.1(b)(1).

iv.     Because the volume of commerce attributable to the defendant was more than $1,000,000 but less than $10,000,000, the defendant's offense level is increased by an additional two levels, pursuant to U.S.S.G. § 2R1.1(b)(2).

v.      The defendant's total offense level for Count One, before any adjustments, is 15.

b.      **Offense Level Calculations for Count Two: Money Laundering Offense**

i.      Pursuant to U.S.S.G. § 8C2.1(a) and § 8C2.3(a), the Guidelines provision applicable to the offense charged in Count Two of the Information is U.S.S.G. § 2S1.1.

ii.     Pursuant to U.S.S.G. § 2S1.1(a)(1), the base offense level is the offense level from the underlying offense from which the laundered funds were derived, defendant's commission of wire fraud in violation of 18 U.S.C. §§ 1343 & 1346. Pursuant to U.S.S.G. § 2B1.1(a)(2), the base offense level for wire fraud is 6.

iii.    The base offense level is increased by an additional 6 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(D) because the value of the laundered funds was more than $40,000 but less than $95,000.

17

iv.     The offense level is increased by 2 levels because defendant was convicted under 18 U.S.C. § 1956, pursuant to U.S.S.G. § 2S1.1(b)(2)(B).

v.     The base offense level is increased by an additional 2 levels pursuant to U.S.S.G. § 2S1.1(b)(3) because the offense involved sophisticated laundering.

vi.     Defendant's total offense level for Count Two, before any adjustments, is 16.

### c.     Grouping Analysis

i.     Pursuant to U.S.S.G.§ 8C2.3(b), the Guidelines provision applicable where there is more than one count is Chapter 3, Part D (Multiple Counts). The parties agree to recommend that, pursuant to U.S.S.G. § 3D1.2, Counts One and Two do not group because the antitrust and money laundering conspiracies are separate schemes, are constituted by different transactions, involve different co-conspirators, and have few overlapping victims.

ii.     The offense level applicable to Count One (Group 1) is 15, and the offense level applicable to Count Two (Group 2) is 16, pursuant to U.S.S.G. § 3D1.3.

iii.     pursuant to U.S.S.G. § 3D1.4(a), Count Two (Group 2) is assigned one Unit as the Group with the highest offense level. Count One (Group 1) is one level less serious and is assigned one Unit. Thus, the offense level of Group 2 is increased by 2 levels, and the combined offense level for Count One and Count Two is 18, pursuant to U.S.S.G. § 3D1.4.

### d. Sentencing Guidelines Fine Range

i.       The Guidelines provision applicable to the calculation of the base fine is U.S.S.G. § 8C2.4. The base fine is the pecuniary loss from the offense caused by the defendant intentionally, knowingly, or recklessly, pursuant to U.S.S.G. § 8C2.4(a)(3).

ii.       In lieu of the pecuniary loss under U.S.S.G. § 8C2.4(a)(3), the guideline applicable to Count One is § 2R1.1(d)(1) and (3), pursuant to U.S.S.G. § 8C2.4(b). The base fine for Count One is $673,024, 20% of the affected volume of commerce of $3,365,120, pursuant to § 2R1.1(d)(1), (3).

iii.       The pecuniary loss from Count Two is approximately $80,522.90.

iv.       Thus, the combined base fine for Count One and Count Two is $753,546.90.

v.       The defendant's Culpability Score is 7 and is determined pursuant to § 8C2.5, as follows:

| | | |
|---|---|---|
| Base Culpability Score: | 5 | § 8C2.5(a) |
| More than 200 employees and participation of personnel with substantial authority | +3 | § 8C2.5(b)(3) |
| Acceptance of responsibility | -1 | § 8C2.5(g)(3) |

vi.       Based on a Culpability Score of 7, the minimum and maximum multipliers are 1.40 and 2.80, pursuant to § 8C2.6.

vii.    The Guidelines Fine Range is $1,054,965.70 to $2,109,931.40, pursuant to § 8C2.7.

17.    Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 19 of this Plea Agreement, and prior to sentencing in this case, the United States will fully advise the Court and the Probation Office of the fact, manner, and extent of the defendant's cooperation and its commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offense, and all other relevant conduct.

18.    The United States and the defendant understand that the Court retains complete discretion to accept or reject the Recommended Sentence provided for in Paragraph 15 of this Plea Agreement.

a.    If the Court does not accept the Recommended Sentence, the United States and the defendant agree that this Plea Agreement, except for subparagraph 18(b) below, will be rendered void.

b.    If the Court does not accept the Recommended Sentence, the defendant will be free to withdraw its guilty plea pursuant to Federal Rules of Criminal Procedure 11(c)(5) and 11(d)(2)(A). If the defendant withdraws its plea of guilty, this Plea Agreement, the guilty plea, and any statement made in the course of any proceedings under Federal Rule of Criminal Procedure 11 regarding the guilty plea or this Plea Agreement or made in the course of plea discussions with an attorney for the government will not be admissible against the defendant in any criminal or

civil proceeding, except as otherwise provided in Federal Rule of Evidence 410. In addition, the defendant agrees that, if it withdraws its guilty plea pursuant to this subparagraph of this Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 21 of this Plea Agreement will be tolled for the period between the date of signature of this Plea Agreement and the date the defendant withdrew its guilty plea or for a period of 60 days after the date of signature of this Plea Agreement, whichever period is greater.

### Defendant's Cooperation

19.    The defendant and its subsidiary corporate entities (collectively, "related entities") will cooperate fully and truthfully with the United States in the prosecution of this case, the current federal investigation of violations of federal antitrust and related criminal laws, including violations of 18 U.S.C. §§ 1341, 1343, 1346, and 1956, involving the sale of commercial flooring services and products in the Northern District of Illinois and elsewhere, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party (collectively "Federal Proceeding"). Federal Proceeding includes, but is not limited to, an investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in, a Federal Proceeding. The full, truthful, and continuing cooperation of the defendant will include but not be limited to:

a.    producing to the United States all documents, information, and other materials, wherever located, not protected under the attorney-client privilege

21

or the work-product doctrine, in the possession, custody, or control of the defendant and its related entities that are requested by the United States in connection with any Federal Proceeding; and

      b.    using its best efforts to secure the full, truthful, and continuing cooperation of the current and former directors, officers, and employees of the defendant and its related entities, including the individuals listed in Paragraph 1 of Attachment A filed under seal, as may be requested by the United States, but excluding Michael P. Gannon, who has entered a separate plea agreement with the United States, and the individuals listed in Paragraph 2 of Attachment A, filed under seal. Such efforts will include, but not be limited to, making these persons available at the defendant's expense for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding. Current directors, officers, and employees are defined for purposes of this Plea Agreement as individuals who are directors, officers, or employees of the defendant, except those listed in Paragraph 2 of Attachment A filed under seal, as of the date of signature of this Plea Agreement.

    20.    The full, truthful, and continuing cooperation of the current directors, officers, and employees of the defendant and its related entities and the individuals listed in Paragraph 1 of Attachment A filed under seal will be subject to the procedures and protections of this paragraph, and will include, but not be limited to:

      a.    producing all documents, including claimed personal documents, and other materials, wherever located, not protected under the attorney-client

privilege or the work-product doctrine, that are requested by attorneys and agents of the United States in connection with any Federal Proceeding;

b.  making himself or herself available for interviews, not at the expense of the United States, upon the request of attorneys and agents of the United States in connection with any Federal Proceeding;

c.  responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making a false statement or declaration in violation of 18 U.S.C. §§ 1001, 1623; obstruction of justice, in violation of 18 U.S.C. § 1503 *et seq.*; or conspiracy to commit such offenses;

d.  otherwise voluntarily providing the United States with any material or information not requested in (a)–(c) of this paragraph and not protected under the attorney-client privilege or work-product doctrine that he or she may have that is related to any Federal Proceeding;

e.  when called upon to do so by the United States in connection with any Federal Proceeding, participating in affirmative investigative techniques, including but not limited to making telephone calls, recording conversations, and introducing law enforcement officials to other individuals, with all such activity being conducted only at the express direction and under the supervision of attorneys and agents of the United States;

f.       when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings fully, truthfully, and under oath, subject to the penalties of perjury in violation of 18 U.S.C. § 1621; making a false statement or declaration in grand jury or court proceedings, in violation of 18 U.S.C. § 1623; contempt, in violation of 18 U.S.C. §§ 401–02; and obstruction of justice, in violation of 18 U.S.C. § 1503 *et seq.*;

g.       not committing, participating in, or attempting to commit or participate in any additional antitrust crime in violation of Title 15, United States Code or any additional fraud or money laundering crimes (18 U.S.C. §§ 1341, 1343, 1346, 1956), or any acts of perjury or subornation of perjury (18 U.S.C. §§ 1621, 1622), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice, in violation of 18 U.S.C. §§ 1503 *et seq.*, contempt, in violation of 18 U.S.C. §§ 401, 402, or conspiracy to commit such offenses; and

h.       agreeing that, if the agreement not to prosecute him or her in this Plea Agreement is rendered void under subparagraph 22(c), the statute of limitations period for any violations of federal antitrust and related criminal laws, including violations of 18 U.S.C. §§ 1341, 1343, 1346, and 1956, involving the sale of commercial flooring services and products in the Northern District of Illinois and elsewhere, will be tolled as to him or her for the period between the date of signature of this Plea Agreement and six months after the date that the United States gave notice of its intent to void its obligations to that person under this Plea Agreement.

i.      This Paragraph 20 does not apply to the individuals listed in Paragraph 2 of Attachment A filed under seal, regardless of their employment status, or to any former director, officer, or employee of the defendant and its related entities except those listed in Paragraph 1 of Attachment A filed under seal.

## Government's Agreement

21.      Subject to the full, truthful, and continuing cooperation of the defendant and its related entities, as defined in Paragraph 19 of this Plea Agreement, and upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the Recommended Sentence, the United States agrees that it will not bring further criminal charges against the defendant or its related entities for any act or offense committed before the date of signature of this Plea Agreement that was undertaken in furtherance of any violations of federal antitrust and related criminal laws, including violations of 18 U.S.C. §§ 1341, 1343, 1346, and 1956, involving the sale of commercial flooring services and products in the Northern District of Illinois and elsewhere. The nonprosecution terms of this Paragraph 21 do not apply to

a.      any acts of perjury or subornation of perjury, in violation of 18 U.S.C. §§ 1621–22; making a false statement or declaration, in violation of 18 U.S.C. §§ 1001, 1623; obstruction of justice, in violation of 18 U.S.C. § 1503 *et seq.*; contempt, in violation of 18 U.S.C. §§ 401–02; or conspiracy to commit such offenses;

b.      civil matters of any kind;

c.      any violation of the federal tax or securities laws or conspiracy to commit such offenses; or

d.      any crime of violence.

25

22. The United States agrees to the following:

    a. Upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the Recommended Sentence and subject to the exceptions noted in subparagraph 22(c), the United States agrees that it will not bring criminal charges against any current director, officer, or employee of the defendant or its related entities, or any individual listed in Paragraph 1 of Attachment A filed under seal, for any act or offense committed before the date of signature of this Plea Agreement and while that person was acting as a director, officer, or employee of the defendant or its relevant entities that was undertaken in furtherance of any violations of federal antitrust and related criminal laws, including violations of 18 U.S.C. §§ 1341, 1343, 1346, and 1956, involving the sale of commercial flooring services and products in the Northern District of Illinois and elsewhere, except that the protections granted in this paragraph do not apply to Michael P. Gannon, who has entered a separate plea agreement with the United States, or the individuals listed in Paragraph 2 of Attachment A filed under seal;

    b. Should the United States determine that any current director, officer, or employee of the defendant or its related entities, or any individual listed in Paragraph 1 of Attachment A, may have information relevant to any Federal Proceeding, the United States may request that person's cooperation under the terms of this Plea Agreement by written request delivered to counsel for the individual (with a copy to the undersigned counsel for the defendant) or, if the individual is not known by the United States to be represented, to the undersigned counsel for the defendant;

   c. If any person requested to provide cooperation under subparagraph 22(b) fails to comply fully with his or her obligations under Paragraph 20, then the terms of this Plea Agreement as they pertain to that person and the agreement not to prosecute that person granted in this Plea Agreement will be rendered void, and the United States may prosecute such person criminally for any federal crime of which the United States has knowledge, including, but not limited to any conduct undertaken in furtherance of any violations of federal antitrust and related criminal laws, including violations of 18 U.S.C. §§ 1341, 1343, 1346, and 1956, involving the sale of commercial flooring services and products in the Northern District of Illinois and elsewhere;

   d. Except as provided in subparagraph 22(e), information provided by a person described in subparagraph 22(b) to the United States under the terms of this Plea Agreement pertaining to any violations of federal antitrust and related criminal laws, including violations of 18 U.S.C. §§ 1341, 1343, 1346, and 1956, involving the sale of commercial flooring services and products in the Northern District of Illinois and elsewhere, or any information directly or indirectly derived from that information, may not be used against that person in a criminal case, except in a prosecution for perjury or subornation of perjury, in violation of 18 U.S.C. §§ 1621–22; making a false statement or declaration, in violation of 18 U.S.C. §§ 1001, 1623; obstruction of justice, in violation of 18 U.S.C. § 1503 *et seq.*; contempt, in violation of 18 U.S.C. §§ 401–02; or conspiracy to commit such offenses;

e. If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 20 of this Plea Agreement, the agreement in subparagraph 22(d) not to use that information or any information directly or indirectly derived from it against that person in a criminal case will be rendered void;

f. The nonprosecution terms of this paragraph do not apply to civil matters of any kind; any violation of the federal tax or securities laws or conspiracy to commit such offenses; any crime of violence; or perjury or subornation of perjury, in violation of 18 U.S.C. §§ 1621–22; making a false statement or declaration, in violation of 18 U.S.C. §§ 1001, 1623; obstruction of justice, in violation of 18 U.S.C. § 1503 *et seq.*; contempt, in violation of 18 U.S.C. §§ 401–02; or conspiracy to commit such offenses; and

g. Documents provided under subparagraphs 19(a) and 20(a) will be deemed responsive to outstanding grand jury subpoenas issued to the defendant and its related entities.

23. The defendant understands that it may be subject to suspension or debarment action by local, state, or federal agencies other than the United States Department of Justice, Antitrust Division, based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in no way controls what action, if any, other agencies may take. However, the Antitrust Division agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner, and extent of the cooperation of the

defendant and its related entities as a matter for that agency to consider before determining what action, if any, to take. The defendant nevertheless affirms that it wants to plead guilty regardless of any suspension or debarment consequences of its plea.

## Representation by Counsel

24.     The defendant has been represented by counsel and is fully satisfied that its attorneys have provided competent legal representation. The defendant has thoroughly reviewed this Plea Agreement and acknowledges that counsel has advised it of the nature of the charge, any possible defenses to the charge, and the nature and range of possible sentences.

## Voluntary Plea

25.     The defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement. The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## Violation of Plea Agreement

26.     The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant has failed to provide full, truthful, and continuing cooperation, as defined in Paragraph 19 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by

personal or overnight delivery, email, or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendant will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant for any violations of federal antitrust and related criminal laws, including violations of 18 U.S.C. §§ 1341, 1343, 1346, and 1956, involving the sale of commercial flooring services and products in the Northern District of Illinois and elsewhere, the statute of limitations period for such offense will be tolled for the period between the date of signature of this Plea Agreement and six months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

27. The defendant understands and agrees that in any further prosecution of it resulting from the release of the United States from its obligations under this Plea Agreement because of the defendant's violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by it, its related entities, or the individuals listed in Paragraph 1 of Attachment A filed under seal to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against it or its related entities. In addition, the defendant unconditionally waives its right to challenge the use of such evidence in

30

any such further prosecution, notwithstanding the protections of Federal Rule of Evidence 410.

## Public Statements by the Defendant

28.     The defendant, and its related entities as defined in Paragraph 19 above, expressly agrees that it will not, through current or future attorneys, directors, officers, employees, agents, or any other person authorized by the defendant to speak on its behalf, make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the defendant set forth above or the facts described in the Information or Factual Basis section of this Plea Agreement. Any such contradictory statement will, subject to cure rights of the defendant described below, constitute a violation of this Plea Agreement, and the defendant thereafter will be subject to prosecution as set forth in Paragraphs 26 and 27 of this Plea Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Information or Factual Basis section of this Plea Agreement was made on behalf of the defendant for the purpose of determining whether it has violated this Plea Agreement will be at the sole discretion of the United States. If the United States determines that a public statement by any such person contradicts in whole or in part a statement contained in the Information or Factual Basis section of this Plea Agreement, the United States shall so notify the defendant, and the defendant may avoid a violation of this Plea Agreement by publicly repudiating such statement(s) within five business days after notification. The defendant will be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Information and the Factual Basis section of

31

this Plea Agreement provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Information or Factual Basis section of this Plea Agreement. This paragraph does not apply to any statement made by any current or future director, officer, employee, or agent of the defendant in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the defendant. This paragraph does not affect the obligation of any person, who is providing cooperation pursuant to Paragraph 20 of this Plea Agreement, to respond fully and truthfully to all inquiries of the United States without falsely implicating any person or intentionally withholding information and to testify fully and truthfully as required by Paragraph 20 of this Plea Agreement.

## Entirety of Agreement

29.    This Plea Agreement and its Attachment A constitute the entire agreement between the United States and the defendant concerning the disposition of the criminal charge in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

30.    The undersigned is authorized to enter this Plea Agreement and its Attachment A on behalf of the defendant as evidenced by the Manager's Certificate on behalf of the defendant attached to, and incorporated by reference in, this Plea Agreement.

31.    The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

32.    A facsimile or PDF signature will be deemed an original signature for the purpose of executing this Plea Agreement. Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

AGREED THIS DATE: _8/27/2021_

ELIZABETH A. HOMAN
  elizabeth.homan@usdoj.gov
CHESTER C. CHOI
  chester.choi@usdoj.gov
MARY T. MCCARTHY
  mary.mccarthy@usdoj.gov
JASON C. TURNER
  jason.turner@usdoj.gov
CARLA M. STERN
  carla.stern@usdoj.gov
  Trial Attorneys

DAVID ZMIJEWSKI
Manager
MR. DAVID'S FLOORING
INTERNATIONAL, LLC, Defendant

SHELDON ZENNER
ELLIOTT M. BACON
Attorneys for Defendant
Katten Muchin Rosenman LLP

U.S. Department of Justice
Antitrust Division
209 South LaSalle Street, Suite 600
Chicago, Illinois 60604